AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
SEP 19 2023
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Records and Information for Snapchat Username: "jinkyjenkinz" stored and maintained at )
Snapchat Inc. at 2772 Donald Douglas Loop North, Santa Monica, CA 90405 )
)

UNDER SEAL

Case No. 4:23-SW-83

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Central _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 USC § 1470 | Transfer Obscene Material to Minor (or attempt) |
| Title 18 USC § 2251(a) LIC RJK | Production of Child Pornography (or attempt) |
| Titel 18 USC § 2422(b) | Coercion and Enticement of Minor (or attempt) |

The application is based on these facts:
See affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

REVIEWED AND APPROVED:

_____
Peter G. Osyf
Assistant United States Attorney

*Applicant's signature*

SA Lisa Carroll, NCIS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 09/19/2023

*Judge's signature*

City and state: Norfolk, Virginia

The Honorable Robert J. Krask, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Snapchat, Inc. Account: **jinkyjenkinz** that is stored at premises owned, maintained, controlled, or operated by Snapchat, Inc. a company headquartered at 2772 Donald Douglas Loop N., Santa Monica, CA 90405, to include information preserved by Snapchat Inc., pursuant to the recent preservation request submitted on July 1, 2023, and assigned the Snap Case ID: bdf0cc1c6b.

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Snapchat, Inc.,**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snapchat, Inc., Snapchat, Inc., is required to disclose the following information to the government for the account or identifier listed in Attachment A. Such information should include the below-described content of the subject account including any messages, records, files, logs, or information that have been deleted, but are still available to Snapchat, Inc., or have been preserved from Snapchat ID: **jinkyjenkinz**

All contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, Snapchat passwords, Snapchat security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(a) All activity logs for the account and all other documents for previous snaps, stories and Chats, to include any metadata and/or content.

(b) Content of sent snaps; story content, chat content;

(c) Content of user's Memories, Snapchat's cloud-storage service;

(d) All Logs, including sender, recipient, date, and time, concerning the previous Snaps sent to or from the Snapchat account of the above users; to include IP addresses associated to accounts listed above.

(e) The types of service utilized by the user;

(f) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(g) All privacy settings and other account settings, including privacy settings for individual Snaps, and all records showing which Snapchat users have been blocked by the account;

(h) All records pertaining to communications between Snapchat and any person regarding the user or the user's Snapchat account, including contacts with support services and records of actions taken.

II. **Information to be seized by the government**

1. All information described above in Section I, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1470, 2251(a), and

2422(b), including, for each account or identifier listed on Attachment A, information pertaining to the following matters, including attempting and conspiring to engage in the following matters:

    a. Any person knowingly engaged in the sexual exploitation of children, as described in 18 U.S.C. § 2251.

    b. The identity of the person(s) who created or used the Snapchat Inc., account, including records that help reveal the whereabouts of such person(s);

    c. Evidence indicating how and when the **SUBJECT ACCOUNT** was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

    d. All records pertaining to communications between Snapchat and any person regarding the **SUBJECT ACCOUNT**;

    e. Evidence indicating the subscriber's state of mind as it relates to the crime under investigation;

    d. Any person knowingly distributing, receiving, producing, or possessing child pornography, as defined at 18 U.S.C. § 2256(8);

    f. Any and all child pornography, meaning any visual depiction including, but not limited to, any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct or such visual depiction appears to be of a minor engaging in sexually explicit conduct;

    g. Child erotica materials, including, but not limited to images that may serve to gratify the sexual interest in children that may reveal a sexual preference, or that may evince a criminal intent to commit violations of 18 U.S.C. §§ 2252(a)(1) and (a)(4)(B);

    h. Evidence of the times the accounts or identifiers listed on Attachment A was used;

    i. Device backups including camera roll and photo stream data to identify child pornography, victims or contraband;

2. Credit card and other financial information including but not limited to bills and payment records;

3. Passwords and encryption keys, and other access information that may be necessary to access the account or identifier listed on Attachment A and other associated accounts.

### III. Disclosure by provider - By Order of the Court

1. Snapchat, Inc. shall disclose responsive data, if any, by sending to Special Agent Lisa Carroll, 1329 Bellinger Blvd., Norfolk, VA, 23511 using the US Postal Service or another courier service or by electronic means notwithstanding 18 U.S.C. § 2251 or similar statute or code.



FILED
SEP 19 2023
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

IN THE MATTER OF THE SEARCH OF:

Information Associated with the Snapchat account: jinkyjenkinz

That is Stored at the Premises Controlled by Snapchat, Inc., 2772 Donald Douglas Loop N., Santa Monica, CA 90405

UNDER SEAL

Case No. 4:23sw 83

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Lisa Carroll, being first duly sworn state:

1. I am a Special Agent of the Naval Criminal Investigative Service (NCIS) as well as a Task Force Officer assigned to Homeland Security Investigations, Norfolk, Virginia. As a HSI Task Force Officer, I have been delegated the full range of law enforcement duties of a Customs Officer pursuant to 19 U.S.C. § 1401. I graduated from the NCIS Special Agent Basic Training Program and Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in areas including civilian criminal law, the Uniform Code of Military Justice (UCMJ), interviews and interrogations, crime scene processing, defensive tactics, and various investigative techniques. I have since specialized in child exploitation, particularly in internet crimes against children, such as online solicitation of children and child pornography. I am a member of the Internet Crimes Against Children (ICAC) Task Force as well as a Task Force Officer with HSI. As part of my daily duties as a NCIS agent, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt, and possession of child pornography in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, violations pertaining to coercion and enticement as defined by 18 U.S.C. § 2422, and violations pertaining to the transfer of obscene material to minors as defined by 18 U.S.C. § 1470. Prior to my employment with NCIS, I was an Adult Protective Investigator with Florida's Department of Children and Families and have additional training and experience in sexual abuse and exploitation among children, disabled adults, and the elderly.

2. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), requiring Snapchat, Inc. to disclose to the government records and other information in its possession pertaining to the subscribers or customers associated with the accounts, including the contents of communications.

3. Specifically, this affidavit is made in support of an application for a warrant to search information associated with the following account (the **SUBJECT ACCOUNT**):

   a. jinkyjenkinz

and seize information associated with this account that are stored at premises owned, maintained, controlled, or operated by Snapchat, Inc., a company headquartered at 2772 Donald Douglas Loop N., Santa Monica, CA 90405. The item to be searched is described in the following paragraphs and in Attachment A. Attachment B describes items to be seized.

4. Your Affiant anticipates executing this warrant by using the warrant to require Snapchat, Inc. to disclose to the government copies of the records and other information (including the content of communications) described in Attachment B. Upon receipt of the information described in Attachment B, government-authorized persons will review that information.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. I have set forth only those facts that I believe are necessary to establish probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 1470, which prohibits the transfer of obscene material to a minor, 2251 which prohibits the production of child pornography, and 2422(b), which prohibits the coercion and enticement of a minor – or attempt to violate the same – are present in the information associated with the above listed Snapchat, Inc. account. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

## PERTINENT FEDERAL CRIMINAL STATUTES

6. 18 U.S.C. § 1470 prohibits activity relating to the transfer of obscene material to minors. The statute states in relevant part: whoever, using the mail or any facility of interstate or foreign commerce, knowingly transfers obscene material to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title, imprisoned not more than 10 years, or both.

7. 18 U.S.C. § 2251 provides any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, shall be punished.

8. 18 U.S.C. § 2422(b) prohibits whoever, using any facility or means of interstate or foreign commerce knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in…any sexual activity for which any person can be charged with a criminal offense, namely Va. Code. § 18.2-370(A)(3), or attempts to do so, shall be punished.

9.  Virginia Code Section 18.2-370(A)(3) – Taking indecent liberties with children – prohibits any person 18 years of age or over, who, with lascivious intent, knowingly and intentionally proposes that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child.

10. Virginia Code Section 18.2-374.1(B)(1) – Production, publication, sale, financing, etc., of child pornography; presumption as to age – finds criminally culpable anyone who accosts, entices or solicits a person less than 18 years of age with intent to induce or force such person to perform in or be a subject of child pornography.

11. Virginial Code Section 18.2-374.3(B) – Use of communications systems to facilitate certain offenses involving children – prohibits any person to use a communications system, including but no limited to computers or computer networks or bulletin boards, or any other electronic means for the purposes of procuring or promoting the use of a minor for any activity in violation of § 18.2-370 [above, para. 9] or 18.2-374.1 [above, para. 10].

## OTHER LEGAL AUTHORITY

12. The legal authority for this search warrant application regarding the **SUBJECT ACCOUNT** is derived from 18 U.S.C. §§ 2701–2711, entitled "Stored Wire and Electronic Communications and Transactional Records Access." Section 2703(a) provides in relevant part as follows:

> (1) A governmental entity may require the disclosure by a provider of electronic communication service of the contents of an electronic communication that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant.
>
> (2) A governmental entity may require the disclosure by a provider of electronic communications services of the contents of an electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

13. 18 U.S.C. § 2703(b) provides, in relevant part, as follows:

> (1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –
>
>> (A) Without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued under the Federal Rules of Criminal Procedure or equivalent State warrant.
>
> (2) Paragraph (1) is applicable with respect to any electronic communication that is held or maintained on that service –

> (A) On behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and
>
> (B) Solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

14. The government may also obtain records relating to e-mail communications, such as subscriber identifying information, by way of a search warrant. 18 U.S.C. § 2703(c)(1)(A).

15. 18 U.S.C. §§ 2703(b)(1)(A) and 2703(c)(1)(A) allow for nationwide service of process of search warrants for the contents of electronic communications and records concerning electronic communication service or remote computing service if such warrant is issued by a court with jurisdiction over the offense under investigation.

16. This investigation involves offenses committed abroad, within the Special Maritime and Territorial Jurisdiction of the United States, as described below. *See* 18 U.S.C. § 7.

17. This investigation involves offenses within the jurisdiction and proper venue of the United States District Court for the Eastern District of Virginia, as more fully articulated below. *See* 18 U.S.C. § 3237(a), 3238; *see also* 18 U.S.C. §§ 3231 and 3232.

## BACKGROUND CONCERNING SNAPCHAT

18. Snapchat is a mobile application made by Snapchat, Inc. and is available through the iPhone App Store and Google Play. The application provides a way to share moments with photos, videos, and text. Snapchat's differentiating feature from other communications is that once the sender is able to set a variable amount of time the message is viewable by the receiver. This time can be between one and ten seconds. At the expiration of the time, the message is deleted from Snapchat's servers. Similarly, the message disappears from the user's devices. If the receiver of a Snapchat message does not access the application on their device the message remains undelivered. Snapchat stores undelivered messages for 30 days. After 30 days the messages are deleted from the company's servers.

19. Snapchat users have the following abilities:

   a. Snaps: A user takes a photo or video using their camera phone in real-time and then selects which of their friends to send the message to. Pictures and videos can also be sent from the saved pictures/videos in the gallery of the device. Unless the sender or recipient opts to save the photo or video, the message will be deleted from their devices (after the content is sent in the case of the sender and after it's opened in the case of the recipient). Users are able to save a photo or video they've taken locally to their device or to Memories, which is Snapchat's cloud-storage service.

b. Stories: A user can add or video snaps to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories. Our Stories is a collection of user submitted snaps from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event.

c. Memories: Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by us and may remain in Memories until deleted by the user.

d. Chat: A user can also type messages, send photos, videos, audio notes, and video notes to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message that they want to keep. The user can clear the message by tapping it again.

e. Snapcash: Snapchat also offers a money transfer service called Snapcash. Users are able to transfer up to $2,500 per week using this service. Snapcash transactions are only permitted using Visa and Mastercard debit cards issued by a United States Financial Institution. Money transfers can only occur if the sender and receiver both have Snapchat installed and have linked an appropriate debit card to their accounts. To facilitate these transaction, Snapchat retains information about the method and source of payment including debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers.

20. Information that Snapchat possess and maintains:

   a. Personally Identifying Information: When a user creates an account they make a unique Snapchat username. This is the name visible to other Snapchat users. A user also enters a data of birth. This is supposed to prevent anyone under the age of 13 from using Snapchat. An email address is required to register a Snapchat account. A new user also has to provide a mobile phone number. This phone number is verified during the registration process. Snapchat sends an activation code that must be entered before proceeding with the registration step. However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

   b. Usage Information: While a Snapchat message may disappear, the record of who sent it and when still exists. Snapchat records and retains log files and information that is roughly analogous to the call detail records maintained by telecommunications companies. This includes the date, time, sender, and recipient of a snap. Additionally, Snapchat stores the number of messages exchanged,

which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

c. Device Information: Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service. They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.

d. Device Phonebook and Photos: If a user consents, Snapchat can access from their device's electronic phonebook or contacts list and images.

e. Financial information: Snapchat retains information about the method and source of payment of customers who use the Snapcash service. This includes debit card information such as the card number, expiration date, CVV security code, and billing address zip code. Additionally, the company may have the date of birth and social security number of those involved in money transfers. Snapcash generate a receipt for any transaction. The receipts are programmed to automatically delete after the sender and recipient have seen the message and swiped out of the Chat screen, unless either taps to save the message. Snapchat maintains transactional records for ten days. These records include information about the sender and receiver, the transaction amount, and date/time stamps of when the message was sent, received, and opened.

f. Message Content: Snapchat's motto is 'delete is our default.' Snapchat deletes a snap once it has been viewed. If the message is not read, because the user has not opened up the application, the message is stored for 30 days before being deleted. However, just because the snap no longer appear to the user, doesn't necessarily mean they are gone. For example, Snapchat has a feature called Replay. This allows users to view a previously viewed snap once per day. This feature is disabled by default and the user must opt-in to use Reply. Also, if a Snapchat user posts an image or video to the MyStory feature it can be viewed by their friends for 24 hours. If the user posted to the Our Stories feature, the snaps are archived and can be viewed through Snapchat.

21.    Therefore, the computers of Snapchat are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Snapchat, such as account access information, transaction information, and account application.

## PROBABLE CAUSE

22. (CHAT 1): On May 22, 2023, the Naval Criminal Investigative Service (NCIS) was conducting an undercover online child exploitation operation. On this day, a NCIS Undercover Agent (UCA 1), posing as a 14 year old female Navy dependent, posted on the Whisper social networking application "just moved herrrre just in time for summa [sun glasses emoji]." At approximately 1833 hours, UCA 1 was contacted via direct message from Whisper user "day man," later identified as Sebastian ANGELO.

23. ANGELO advised he was at school and bored and asked UCA 1 if she was a male or female. UCA 1 advised she was a female. ANGELO advised he was a male. UCA 1 asked how old ANGELO was and he informed UCA 1 that he was 27 and asked "wby?" [what about you]. UCA 1 advised she was 14 and asked what school ANGELO did. ANGELO advised he was in school for aircraft mechanics and that he was getting his "a&p license." ANGELO also advised that he does not fly, just fixes aircraft and stated "They do tours at work if you ever wanted to go"... "It's called fighter factory" and advised that it was located in Virginia Beach. ANGELO also asked UCA 1 if she had Snapchat or Instagram. UCA 1 responded that she had Snapchat and provided her Snapchat username. ANGELO advised that he "added" UCA 1. UCA 1 subsequently received a Snapchat friend add request from Snapchat username "jinkyjenkinz" **[the SUBJECT ACCOUNT]** with a display name of "Sebastian Angelo." UCA 1 asked, on Whisper, "Sebastia [sic]?" and ANGELO replied "Yeah." Communications then continued on Snapchat.

24. On May 22, 2023, UCA 1 accepted ANGELO's friend add on Snapchat and sent the message "hi day man from whisper [crazy face emoji]." ANGELO replied "Yes lol. Would you wanna trade a selfish?" UCA 1 agreed and exchanged "live" Snapchat "selfies." The individual in ANGELO's "live" Snapchat image was identified as the same individual in ANGELO's DMV photograph. ANGELO told UCA 1 she was cute and proceeded to ask what she was up to and what she liked to do for fun. UCA 1 advised she liked to ride horses and ANGELO suggested "maybe you can teach me." UCA 1 reiterated her age by saying that her mom would not let her ride until she turned 13 last year.

25. On May 22, 2023, ANGELO asked UCA 1 if she liked going to the beach and asked if she would "wanna check it out sometime." ANGELO also asked if UCA 1 had a bathing suit and advised if she needed a new one, they could go shopping for one. ANGELO also suggested that he and UCA 1 go see a movie. UCA 1 agreed and advised she would have to figure out when to sneak out. ANGELO asked "you'd have to sneak out?" and UCA 1 replied that she would because her dad would not let her have a boyfriend until she was 16 and that he would "freak" if she told him she was going with an older guy. ANGELO replied "Lol I mean I don't blame him." Shortly after, ANGELO asked what UCA 1 was doing when she did not reply, and UCA 1 advised that she was with family and could not talk much at the moment. ANGELO told UCA 1 to hit her up whenever she was free. Later in the evening, ANGELO again messaged UCA 1 and asked "Hey, you still busy?"

26. Throughout the day on May 23, 2023, ANGELO and UCA 1 conversed, where ANGELO asked multiple times how UCA 1's errands were going with her dad and if she was still out.

ANGELO advised that he hoped UCA 1 would get home soon and shortly after, asked if UCA 1 knew when she would be free to hangout. UCA 1 advised she could later that night or the next night and ANGELO responded that if they hung out during the week it would have to be late because he did not get out of class until 10:30. ANGELO advised if they hung out late, there would not be much open except the beach or a late movie. UCA 1 asked what ANGELO would want to do at the beach. ANGELO advised there would not really be much to do at night and asked UCA 1 if she had any other ideas or if there was something else she would want to do. UCA 1 replied "idk" and that she would be "up for anything." ANGELO asked to "see" UCA 1 again and after UCA 1 sent another "live" Snapchat "selfie," ANGELO asked if UCA 1 had Instagram too, which UCA 1 replied in the negative.

27.     On May 23, 2023, ANGELO asked "So what were you looking for on whisper if you're being honest." UCA 1 advised "tbh [to be honest] anything my friend said it was fun to meet ppl and stuf its where ahe [sic] met her bf [boyfriend]." ANGELO asked UCA 1 if she wanted a boyfriend and UCA 1 replied "idk i told u im down for whatev." ANGELO then stated "same" and asked UCA 1 if she liked older guys. UCA 1 advised "yea ig [I guess]" and stated that boys her age were kind of dumb. ANGELO advised they could "talk" until they were old enough to date. UCA 1 asked when that was and ANGELO stated "Well to date I think 16. I mean we can still hangout, probably just couldn't date yet." ANGELO and UCA 1 discussed how UCA 1 had one older boyfriend before.

28.     On May 23, 2023, ANGELO asked the UCA 1 if she still wanted to hang out." The UCA 1 advised "like ig what u wanna do tho" and ANGELO asked "Wait were you looking to have fun?" The UCA 1 sent a shrugging emoji and told ANGELO "I told u I was up for whatev." ANGELO then asked if he could ask the UCA 1 something personal and asked if the UCA 1 was "thick or skinny." ANGELO subsequently asked for a "short vid" of the UCA 1's body. ANGELO asked if the UCA 1 was home and the UCA 1 advised that her dad was in the Navy and they did not get their military house yet, so they were currently staying in a hotel. ANGELO subsequently asked "Oh ok, could you take another but with your jeans lowered under your butt? [heart face emoji]" ANGELO also requested the UCA 1 take a picture with her shirt raised up if she could not "get a good butt one." The UCA 1 sent a "live" Snapchat selfie depicting herself in the bathroom mirror with her shirt pulled up several inches, exposing between her jean waistline and her belly button. ANGELO responded "What if you took it off?" ANGELO also advised that he wanted to see more if he could and that the UCA 1 was "getting him hard" in class. ANGELO asked "Wanna get me really hard so I can't get up?" ANGELO also requested "sexy pics." The UCA 1 sent an image depicting herself in a bathing suit. ANGELO replied "I wanna see your butt so bad [two sobbing face emojis]" and "Think you could take your jeans off and take a quick video or pic? [two pleading face emojis]" The UCA 1 subsequently sent a "live" Snapchat image of herself with her jeans pulled slightly down on one side exposing the side of her underwear." ANGELO also stated "Show me that pretty little ass princess [princess emoji]" and "With no jeans sweetie, pull them down under your cheeks [heart face emoji, hot face emoji]" and "Maybe send just one and I'll send a nude back?" During the conversations the UCA 1 advised that guys just want "pics" then to "Ghost." The UCA 1 advised that she did not even like her nudes. ANGELO replied "Lmao [laugh my ass off] well maybe I will. Send your favorite if you want." Throughout the evening, ANGELO continued to "beg" and request for the UCA 1 to send him a "nude" and asked what the UCA 1 was doing on Friday.

29.  On May 24, 2023, the UCA 1 asked ANGELO what he was doing and ANGELO advised "nm [nothing much] you?" The UCA 1 advised she was getting ready to be by herself all night again and ANGELO replied "Wanna hangout and get your pretty little pussy fucked? That could be fun." ANGELO subsequently sent a saved image depicting an adult male's penis. The UCA 1 advised "omg there's no way that's gonna fit" and advised she could not get pregnant or her dad would kill her. ANGELO replied "I won't cum in you princess" and "Are you tiny?" [referring to the UCA 1's vagina] and "can I see?" ANGELO also sent a second saved image depicting an erect penis of an adult male. ANGELO asked "If I don't fit can I fuck your mouth?"

30.  On May 24, 2023, ANGELO asked "Were you ever curious to see a horses dick when you were riding?" The UCA 1 advised she had seen them before. ANGELO asked the UCA 1 if she liked them and the UCA 1 advised that she never thought of it like that and asked if ANGELO liked them [horse penises]. ANGELO replied "I think it'd be hot if you played with one lol." The UCA 1 clarified "a horses dick??" and ANGELO replied "Yeah lol." ANGELO asked "Think you would suck on it while I drive?" The UCA 1 advised "ig [I guess]" and asked where they would go and reminded ANGELO that she was 14 and could not drive. ANGELO advised he was going to pick the UCA 1 up and subsequently sent the UCA 1 an image depicting a horse's penis followed by the text "would you touch it?" The UCA 1 replied "lol ig???" and ANGELO responded "What about rub your pussy on it?" The UCA 1 joked and asked if ANGELO was going to bring a horse and asked if people did that with horses. ANGELO did not answer and communications temporarily ceased.

31.  (CHAT 2): On May 23, 2023, NCIS was conducting an undercover online child exploitation operation. On this day, a second NCIS Undercover Agent (UCA 2) posted on the Whisper social networking application "soo bored [melting face emoji]" At approximately 1425 hours, UCA 2 was contacted via direct message by ANGELO from his "day man" Whisper account. ANGELO asked UCA 2 "Still bored?" ANGELO and UCA 2 converse more on Whisper, where ANGELO advised that he was driving home from his school, which was at the Aviation Institute of Maintenance. UCA 2 asked ANGELO how old he was and ANGELO advised he was 27. UCA 2 informed ANGELO she was 14.

32.  On May 23, 2023, UCA 2 received a Snapchat friend add request from Snapchat username "jinkyjenkinz" [the **SUBJECT ACCOUNT**] with a display name of "Sebastian Angelo." UCA 2 accepted the request and ANGELO messaged UCA 2 "hey." ANGELO continued to ask what UCA 2 was looking for on Whisper. ANGELO asked UCA 2 if she wanted to do anything and UCA 2 advised she did not know and ANGELO asked "Would you wanna get your pussy ate?" ANGELO also asked "Can you show daddy your pussy baby?" Communications ceased on this day.

33.  (CHAT 3): On July 21, 2023, during an undercover child exploitation operation, UCA 1 posted on Whisper "I wanna go to the beach [sobbing face emoji]" UCA 1 was contacted by ANGELO on his Whisper account "day man." ANGELO offered to take UCA 1 to the beach the following day. ANGELO asked UCA 1 if she had Instagram or Snapchat. UCA 1 advised she had Snapchat and asked for ANGELO's Snapchat, which he provided as "jinkyjenkinz" **[the**

**SUBJECT ACCOUNT**]. UCA 1 stated that she had talked to ANGELO before and advised she just messaged him.

34.     On July 21, 2023, ANGELO asked UCA 1 if she wanted to hang out. UCA 1 told ANGELO she was 14 and could not drive but was "down for whatev." ANGELO suggested taking UCA 1 to the beach to "just relax." UCA 1 advised she did not want to go to the beach in the dark and ANGELO asked if UCA 1 wanted to go the following day. ANGELO and UCA 1 conversed until communications ceased on July 24, 2023.

35.     Database searches for "Sebastian Angelo" revealed that the individual in ANGELO's DMV photograph appears to be the same individual sent in the "live," real-time Snapchat photographs sent to UCA 1 by ANGELO. Surveillance and database checks further revealed that ANGELO is the step-son of an active duty U.S. Navy Captain stationed in the Eastern District of Virginia. Furthermore, ANGELO and his active duty step-father reside together in Chesapeake, VA which is also located in the Eastern District of Virginia.

## CONCLUSION

36.     As explained herein, information stored in connection with the **SUBJECT ACCOUNT** may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with electronic accounts can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, electronic account communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the ESP can show how and when the account was accessed or used. For example, e-mail providers typically log the IP addresses from which users access the e-mail account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the e-mail account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored in the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via e-mail). Lastly, stored electronic data may provide relevant insight into the electronic account owner's state of mind as it relates to the offense under investigation. For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

37.     Based on the aforementioned factual information, I respectfully submit that probable cause exists to believe that the account described in Attachment A, contains evidence, fruits, and instrumentalities related to violations of 18 U.S.C. §§ 1470, 2251, and 2422(b).

38. Accordingly, I request that a warrant be issued authorizing me, with assistance from additional law enforcement personnel, to search the **SUBJECT ACCOUNT** described in Attachment A, for the particular things to be seized, which are described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

*Lisa Carroll*

Lisa Carroll, Special Agent
Naval Criminal Investigative Service
Norfolk, VA

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Peter Osyf.

Reviewed: _____
Peter Osyf
Assistant United States Attorney

Subscribed and sworn to before me this 19th day of September 2023, in the City of Norfolk, Virginia.

_____
The Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE